[No. 37492-7-II.   Division Two.   March 9, 2010.]

DAVID N. SMITH, *Appellant*, v. THE EMPLOYMENT SECURITY DEPARTMENT, *Respondent*.

26

*Clayton E. Longacre* (of *Longacre Law Inc.*), for appellant.

*Robert M. McKenna, Attorney General,* and *Jennifer Steele* and *Pedro Bernal IV, Assistants*; and *Russell D. Hauge, Prosecuting Attorney for Kitsap County,* and *Jacquelyn M. Aufderheide, Deputy,* for respondent.

¶1 QUINN-BRINTNALL, J. — David Smith seeks judicial review of a decision by the commissioner (Commissioner) of the Employment Security Department (ESD) denying his application for unemployment benefits because of his disqualifying misconduct. The Commissioner found that Smith committed misconduct by secretly recording his conversations with co-workers and members of the public without their knowledge or consent in violation of Kitsap County policy and state law. Additionally, the Commissioner found that Smith committed misconduct by removing unauthorized software from his county-owned laptop computer after his supervisor instructed him to return the laptop without deleting anything on it. Because substantial evidence supports the Commissioner's decision that Smith committed disqualifying misconduct and the Commissioner correctly applied the law, we deny Smith's petition and affirm the agency order denying him unemployment benefits.

## FACTS

¶2 Smith worked for the Kitsap County Department of Public Works from May 1990 until his termination on April 19, 2006. At the time of Smith's termination, he was working as the senior program manager for the Transportation Traffic Division. Smith began secretly recording conversations with co-workers and members of the public in the fall of 2001 and continued until November 2004. Smith asserts that he began making these recordings because he feared retaliatory harassment by his supervisors for his refusal to file a

false affidavit on behalf of the county and for supporting an employee in her sexual harassment claim. Smith also claimed that one of his supervisors threatened him with physical harm. He did not report these alleged threats to the police.

¶3 Smith made his recordings on an unsophisticated digital voice recorder. Smith would place the recorder in his pocket and leave it on "until the time ran out," at which point he would "either shut it off and start over, or if there was something [recorded] that [he] thought was interesting[,] take it home and download it onto [his county-owned] computer." Administrative Record (AR) at 144. Smith's recording system did not allow him to target any specific conversations and resulted in his surreptitious recording of random conversations with various individuals, including co-workers and members of the public. Smith did not limit his recordings to conversations that took place in his office. He surreptitiously recorded conversations that occurred in county-owned vehicles, in local businesses, and inside Kitsap County residents' homes.

¶4 On February 9, 2004, Smith filed an administrative whistleblower complaint with Jacquelyn Aufderheide, civil deputy prosecutor for Public Works. On February 11, 2004, Smith notified Aufderheide that he had recordings containing incriminating statements by his supervisors.

¶5 In March 2006, Smith filed an Equal Employment Opportunity Commission (EEOC) complaint that alleged he faced retaliation for supporting a female subordinate's sexual harassment claims. The county terminated Smith's employment five weeks after he filed the EEOC complaint.

¶6 On or about March 10, 2005, the director of Public Works, Randy Casteel, instructed Smith to turn over his laptop to the county and to refrain from deleting anything on it because it was being subpoenaed by the prosecutor's office. The parties dispute the specifics of Casteel's instruction. ESD claims that Casteel told Smith not to remove "anything" from the computer; Smith claims that Casteel only told him not to remove any "files" from the computer.

Smith did not immediately turn over the computer, which was located at his home. Before turning over the laptop, Smith removed an unauthorized program he had previously installed that allowed him to download and store his audio recordings. Smith claims that he removed the program because he owned it and he feared that the county would not return the computer to him. He did not inform his supervisor that he had removed the program.

PROCEDURAL FACTS

¶7 On April 28, 2006, following his termination, Smith applied for unemployment benefits with ESD. On May 20, 2006, ESD approved Smith's application for benefits, finding that Smith did not engage in disqualifying misconduct. The county requested a hearing to contest ESD's determination, and a hearing was held on September 19, 2006, before an administrative law judge (ALJ).

¶8 At the hearing, Smith testified that he was not aware of any county policy against recording without consent. Several witnesses also testified that they were not aware of a county policy prohibiting employees from secretly recording others without their consent. At the administrative hearing, Casteel conceded that the county did not have a specific policy that prohibited employees from recording others without their knowledge or consent but he testified that instructors covered the topic at a training seminar. Casteel testified that the training seminar covered the topic of recording conversations in a role-play exercise, after which trainers discussed the statutory requirement of obtaining consent before recording. Casteel also testified that Smith's personnel records show that he attended one of these training seminars, but Casteel admitted that he did not have personal knowledge of whether Smith was present for that portion of the training.

¶9 The ALJ affirmed ESD's decision, finding that Smith did not commit disqualifying misconduct and that he was eligible for unemployment benefits. The county filed a petition for review of the ALJ's determination with the ESD

Commissioner. The Commissioner adopted the ALJ's findings of fact in part, made additional findings, and ultimately rejected the ALJ's decision, determining that Smith engaged in disqualifying misconduct. The Kitsap County Superior Court affirmed the Commissioner's order. Smith timely appeals.

## ANALYSIS

STANDARD OF REVIEW

¶10 The Washington Administrative Procedure Act (APA), ch. 34.05 RCW, governs judicial review of a final decision by the ESD Commissioner. *Verizon Nw., Inc. v. Emp't Sec. Dep't*, 164 Wn.2d 909, 915, 194 P.3d 255 (2008). We sit in the same position as the superior court and apply the APA standards directly to the administrative record. *Verizon*, 164 Wn.2d at 915. We review the decision of the Commissioner, not the underlying decision of the ALJ. *Verizon*, 164 Wn.2d at 915 (citing *Tapper v. Emp't Sec. Dep't*, 122 Wn.2d 397, 405-06, 858 P.2d 494 (1993)).

¶11 We consider a Commissioner's decision to be prima facie correct, and the "burden of demonstrating the invalidity of agency action is on the party asserting invalidity," here Smith. RCW 34.05.570(1)(a); *Anderson v. Emp't Sec. Dep't*, 135 Wn. App. 887, 893, 146 P.3d 475 (2006). We may reverse the Commissioner's decision if the Commissioner based his decision on an error of law, if substantial evidence does not support the decision, or if the decision was arbitrary or capricious. RCW 34.05.570(3)(d), (e), (i).

¶12 We review questions of law de novo, giving substantial weight to the agency's interpretation of the statutes it administers. *Everett Concrete Prods., Inc. v. Dep't of Labor & Indus.*, 109 Wn.2d 819, 823, 748 P.2d 1112 (1988). We review the Commissioner's findings of fact for substantial evidence in light of the whole record. RCW 34.05.570(3)(e); *Lee's Drywall Co. v. Dep't of Labor & Indus.*, 141 Wn. App. 859, 864, 173 P.3d 934 (2007). "Sub-

stantial evidence" is evidence that would persuade a fair-minded person of the truth or correctness of the matter. *King County v. Cent. Puget Sound Growth Mgmt. Hearings Bd.*, 142 Wn.2d 543, 553, 14 P.3d 133 (2000). Whether an employee's behavior constitutes misconduct, warranting termination, is a mixed question of law and fact. *Tapper*, 122 Wn.2d at 402-03.

FAILURE TO ASSIGN ERROR TO FINDINGS OF FACT

■ ¶13 As an initial matter, we note that Smith assigned error to only one finding of fact, which he now concedes was correct. Additionally, Smith assigns error to the superior court's conclusions rather than the administrative agency's conclusions. Generally, we treat unchallenged findings of fact as verities on appeal and limit review to determining whether the findings support the conclusions. *Fuller v. Emp't Sec. Dep't*, 52 Wn. App. 603, 605, 762 P.2d 367 (1988). But RAP 1.2(a) permits liberal interpretation of these rules and allows appellate review in spite of technical violations where proper assignment of error is lacking but the nature of the challenge is clear and the challenged findings are set forth in the party's brief. *Fuller*, 52 Wn. App. at 605 (citing *Green River Cmty. Coll. Dist. No. 10 v. Higher Educ. Pers. Bd.*, 107 Wn.2d 427, 431, 730 P.2d 653 (1986)).

¶14 Here, we exercise our discretion to address Smith's challenges to the Commissioner's findings of fact because the nature of Smith's challenge is clear and because he discusses his contentions with specific findings of fact in the argument portion of his brief. *See Daughtry v. Jet Aeration Co.*, 91 Wn.2d 704, 709-10, 592 P.2d 631 (1979) (Despite failure to strictly comply with RAP 10.3, appellate courts may consider merits of the challenge where the nature of the challenge is perfectly clear and the challenged finding is set forth in the appellate brief.); *Hitchcock v. Dep't of Ret. Sys.*, 39 Wn. App. 67, 72 n.3, 692 P.2d 834 (1984) (failure to designate a specific finding of fact as error in an appeal from agency determination did not bar appellate review under

RAP 10.3 where nature of the challenge was clear and the challenge to the finding was extensively discussed in the brief), *review denied*, 103 Wn.2d 1025 (1985).

### DISQUALIFYING MISCONDUCT

¶15  Under the Employment Security Act, Title 50 RCW, a discharged worker who commits "misconduct connected with his or her work" cannot receive unemployment compensation benefits. RCW 50.20.066(1); *Tapper*, 122 Wn.2d at 399. Here the county presented two allegations of misconduct that it claimed disqualified Smith from receiving unemployment benefits: (1) his surreptitious tape recordings of conversations with co-workers and members of the public and (2) his removal of an unauthorized program from a county-owned computer after his supervisor told him that the computer had been subpoenaed and directed that he turn the computer over without deleting anything on it.

### A. RECORDING WITHOUT CONSENT

■ ■  ¶16  RCW 50.04.294(2)(f) provides that it is "misconduct" for an employee to "[v]iolat[e] a company rule if the rule is reasonable and if the claimant knew or should have known of the existence of the rule."[1] Smith asserts that substantial evidence does not support the Commissioner's final order, which found that Smith engaged in disqualifying misconduct, because he (Smith) was not aware that there was a county policy prohibiting his recording of co-workers or members of the public without their knowledge and consent. Specifically, Smith challenges the Commissioner's finding that

> [c]ompetent evidence of record establishes, and we find as fact, that the claimant was aware his recording of conversations with said parties was impermissible . . . , that the claimant was aware the recording of said conversations was not in the best interests of his employer [and] that the claimant's assertion he

---

[1] Smith does not contend that a rule against recording others without their consent is unreasonable.

concealed the making of said recordings out of fear of [his supervisor] is not credible.

AR at 351.

¶17 Smith argues that substantial evidence does not support the Commissioner's finding because several witnesses testified that they were not aware of the county policy prohibiting employees from recording others without their consent. Smith is essentially asking this court to reweigh the evidence and to evaluate the credibility of witnesses. But we will not substitute our judgment for that of the agency regarding witness credibility or the weight of evidence. *Hahn v. Dep't of Ret. Sys.*, 137 Wn. App. 933, 942, 155 P.3d 177 (2007), *review denied*, 162 Wn.2d 1017 (2008); *Affordable Cabs, Inc. v. Emp't Sec. Dep't*, 124 Wn. App. 361, 367, 101 P.3d 440 (2004). Rather, our review is limited to determining whether substantial evidence supports the Commissioner's finding.

¶18 Here, Casteel testified that a training seminar, which Smith attended, addressed the county policy against recording without consent in a role-play scenario. Although Casteel testified that he did not know if Smith was present at the seminar for this portion of the training, this is substantial evidence that Smith *"should have known* of the existence of the rule." RCW 50.04.294(2)(f) (emphasis added); *see also* WAC 192-150-210(5) ("The department will find that you knew or should have known about a company rule if you were provided an employee orientation on company rules.").

¶19 Although there was conflicting testimony regarding the existence of the county rule against recording without consent, the Commissioner apparently found Casteel's testimony credible,[2] and we do not "substitute our judgment

---

[2] Smith also argues that the Commissioner's findings violate RCW 34.05.464(4) because it takes a contrary position to that of the ALJ regarding credibility determinations. RCW 34.05.464(4) provides that the Commissioner "shall give due regard to the presiding officer's opportunity to observe the witnesses." But we have held that RCW 34.05.464(4) does not require a reviewing officer to defer to an ALJ's credibility determinations. *Regan v. Dep't of Licensing*, 130 Wn. App. 39, 59,

for that of the agency regarding witness credibility or the weight of evidence." *Affordable Cabs*, 124 Wn. App. at 367. Because substantial evidence supports the finding that Smith knew or should have known that recording others without their consent was a violation of county policy, the Commissioner properly concluded that Smith's action constituted "misconduct" as that term is defined in RCW 50.04.294(2)(f).

¶20 Moreover, even if substantial evidence did not support the Commissioner's finding that Smith was aware of the county policy against recording without consent, the record supports a conclusion that Smith nonetheless committed "misconduct" as defined in RCW 50.04.294(1)(d).

¶21 RCW 50.04.294(1)(d) provides that it is "misconduct" for an employee to engage in "[c]arelessness or negligence of such degree or recurrence to show an intentional or substantial disregard of the employer's interest." Here, the Commissioner concluded that Smith's conduct in recording members of the public without their knowledge and consent was in disregard to his employer's interest because

> [s]uch conduct, if known by the general public of Kitsap County, could certainly impact a citizen's willingness to discuss issues with a county employee, thereby adversely impacting the county's interest in serving its constituents, as well as exposing the county to litigation and liability.

AR at 357.

¶22 Smith contends that his actions were not adverse to his employer's interests because he did not "disclose that he was recording conversations." Reply Br. of Appellant at 14. But Smith's contention lacks merit. By recording members of the public without their knowledge and consent, he potentially damaged the county's reputation. Former WAC

121 P.3d 731 (2005), *review denied*, 157 Wn.2d 1013 (2006). Rather, a reviewing officer is authorized to make his own independent determinations based on the record and has the ability and right to modify or to replace an ALJ's findings, including findings of witness credibility. *Regan*, 130 Wn. App. at 59.

192-150-200(2) (2005)[3] states, "[A]ction or behavior must result in harm or *create the potential for harm to your employer's interests.* This harm may be ... intangible, such as *damage to your employer's reputation.*" (Emphasis added.) Additionally, the Commissioner was not required to find that Smith intended to harm his employer's reputation; it is sufficient that Smith intentionally performed an act in willful disregard for its probable consequences. *Hamel v. Emp't Sec. Dep't*, 93 Wn. App. 140, 146-47, 966 P.2d 1282 (1998), *review denied*, 137 Wn.2d 1036 (1999). Thus, the Commissioner's order finding that Smith was disqualified from unemployment benefits for engaging in disqualifying misconduct was not arbitrary or capricious. RCW 34.05.570(3)(i).

B. PRIVACY ACT VIOLATIONS

¶23 Smith's recordings of co-workers and members of the public without their consent also disqualified him from receiving unemployment benefits under RCW 50.04.294. RCW 50.04.294(2)(e) and (g) provide that an employee commits misconduct if he engages in "[d]eliberate acts that are illegal" or "[v]iolations of law ... while acting within the scope of employment ... that substantially harm the employer's ability to do business." Smith contends that substantial evidence does not support the Commissioner's finding that he recorded private conversations in violation of the privacy act, RCW 9.73.030 and, consequently, that the Commissioner erroneously interpreted the law when concluding that Smith's conduct was illegal. Specifically, Smith challenges the Commissioner's finding that

> [t]he work-related conversations secretly recorded by the claimant while speaking on behalf of Kitsap County were "private" conversations, as that term is contemplated by RCW 9.73.030 and interpreted in *State v. Clark*, 129 Wn.2d 211, 224-30, 916 P.2d 384 (1996).

AR at 357.

---

[3] Smith does not contend that former WAC 192-150-200 is contrary to RCW 50.04.293.

¶24 The privacy act, RCW 9.73.030, states in relevant part:

(1) Except as otherwise provided in this chapter, it shall be unlawful for any individual, partnership, corporation, association, or the state of Washington, its agencies, and political subdivisions to intercept, or record any:

. . . .

(b) Private conversation, by any device electronic or otherwise designed to record or transmit such conversation regardless how the device is powered or actuated without first obtaining the consent of all the persons engaged in the communication.

¶25 Under RCW 9.73.030, "the protections of the Privacy Act apply only to *private* communications or conversations." *Clark*, 129 Wn.2d at 224 (citing *Kadoranian v. Bellingham Police Dep't*, 119 Wn.2d 178, 189, 829 P.2d 1061 (1992)). Because our legislature has not defined the term "private conversation" in chapter 9.73 RCW, appellate courts have given "private conversation" its ordinary and usual meaning:

"[B]elonging to one's self . . . secret . . . intended only for the persons involved (a conversation) . . . holding a confidential relationship to something . . . a secret message: a private communication . . . secretly: not open or in public."

*State v. Forrester*, 21 Wn. App. 855, 861, 587 P.2d 179 (1978) (some alterations in original) (quoting WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (1969)), *review denied*, 92 Wn.2d 1006 (1979); *see also Kadoranian*, 119 Wn.2d at 190 (quoting *Forrester*, 21 Wn. App. at 861).

¶26 The " 'intent or reasonable expectations of the participants [of a conversation] as manifested by the facts and circumstances of each case' control as to whether a conversation is private." *Clark*, 129 Wn.2d at 224 (quoting *Kadoranian*, 119 Wn.2d at 190). Whether a particular conversation is private is a question of fact, but where the facts are undisputed and reasonable minds could not differ, the issue may be determined as a matter of law. *Kadoranian*, 119 Wn.2d at 190.

¶27 Here, the record clearly shows that Smith indiscriminately and surreptitiously recorded conversations with co-workers, superiors, and members of the public without the other individuals' consent or knowledge. Smith made these recordings in his office, as well as inside county-owned vehicles, local businesses, and Kitsap County residents' homes.[4] Smith does not dispute that these recordings took place in this manner but, instead, he argues that the Commissioner failed to specify any facts showing that a particular conversation was private. But the issue of whether a conversation is private may be decided as a matter of law where, as here, the facts are undisputed and reasonable minds could not differ. *Kadoranian*, 119 Wn.2d at 190. Thus, substantial evidence supports the Commissioner's finding that Smith recorded private conversations and the Commissioner did not erroneously interpret the law in concluding that Smith's recordings violated the privacy act. Accordingly, Smith is disqualified from receiving unemployment benefits because he engaged in "[d]eliberate acts that [were] illegal" and "violat[ed the] law . . . while acting within the scope of employment that substantially affect[ed his] employer's ability to do business," contrary to RCW 50.04.294(2)(e) and (g).

C. Violation of Employer Directive

¶28 Last, Smith argues that substantial evidence does not support the Commissioner's finding that,

[i]n March 2005, the claimant was directed by the employer's Director of Public Works to turn in his laptop computer without deleting any files from that computer. The claimant returned the computer, but, prior to so doing, and in direct violation of his employer's directive, he deleted the program that allowed him to download recorded conversations from his digital recorder. Such conduct further establishes the claimant's aware-

---

[4] The technology that Smith used recorded until the power ran out. Thus, while running, it recorded all of Smith's conversations occurring in and around Smith, including those in elevators and restrooms.

ness his above-cited record of conversations was impermissible and not in the best interest of his employer.

AR at 352.

¶29 Smith asserts that substantial evidence does not support the Commissioner's finding because he testified that Casteel ordered him not to remove any "files" from his computer and he only removed a "program," not a file. Smith contends that his testimony was not rebutted because Casteel admitted he was unsure whether he instructed Smith not to remove any "files" or not to remove "anything" from his computer before turning it over to the county. But in common parlance, a computer program is an electronic file. Moreover, when asked whether he told Smith not to "[d]elete anything," Casteel responded, "Well, that's what I thought I said. [Smith] says differently. I don't know why I would specifically say files, but that's what he says." AR at 34. And later in the hearing, Smith's counsel asked Casteel on cross-examination, "Did you make it clear to [Smith] that you didn't want him to delete anything that included programs that he may own?" AR at 60. Casteel responded, "I don't recall saying specifically programs, files, I told him not to delete anything from the computer." AR at 60. Contrary to Smith's assertion, Casteel testified that he told Smith not to delete anything from his computer.

¶30 The Commissioner apparently found Casteel's testimony to be credible, and we will not substitute our judgment for that of the agency regarding witness credibility or the weight of evidence. *Hahn*, 137 Wn. App. at 942. Substantial evidence supports the Commissioner's finding that Smith violated his employer's directive to return his laptop without deleting anything. And, under RCW 50.04-.294(2)(a), "[i]nsubordination showing a deliberate, willful, or purposeful refusal to follow the reasonable directions or instruction of the employer" constitutes "misconduct." Thus, the Commissioner's order denying Smith's unemployment benefits for engaging in misconduct was not arbitrary or capricious. Moreover, Smith's conduct in deleting his unauthorized program from the county-owned computer

before turning it over in response to a subpoena potentially subjected the county to liability and, thus, disqualified him from receiving unemployment benefits under RCW 50.04.294(1)(d).

¶31 Smith's claim that the county actually terminated him for his whistleblowing activities and not for his admitted misconduct is a subject for a jury to determine in a wrongful termination action and is not relevant to our review of the agency decision here. If the county terminated Smith in retaliation for his whistleblowing activities, he is entitled to compensation for wrongful termination. But that issue is not properly before us and we cannot treat every appeal from an unemployment compensation decision as a wrongful termination case.[5] Accordingly, we affirm the Commissioner's order denying Smith unemployment benefits for engaging in disqualifying misconduct and denying his petition for judicial review.

PENOYAR, A.C.J., and HUNT, J., concur.

---

[5] We note in this regard that the legislature has indicated its intent to limit ESD's determinations to unemployment compensation decisions under Title 50 RCW and, thus, ESD's finding that Smith committed disqualifying misconduct would not have any preclusive effect in a separate wrongful termination action against the county. RCW 50.32.097; *see Christensen v. Grant County Hosp. Dist. No. 1*, 152 Wn.2d 299, 315 n.8, 96 P.3d 957 (2004) (noting that, under RCW 50.32.097, ESD's unemployment benefits decision had no bearing in wrongful termination case).