FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON

2013 APR 29  AM 10: 02

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| MELODIE R. HOFF, | ) |
| | ) DIVISION ONE |
| Appellant, | ) |
| | ) No. 68442-6-I |
| v. | ) |
| | ) UNPUBLISHED OPINION |
| STATE OF WASHINGTON | ) |
| DEPARTMENT OF EMPLOYMENT | ) |
| SECURITY, | ) |
| | ) |
| Respondent. | ) FILED: April 29, 2013 |
| | ) |

DWYER, J. — Melodie R. Hoff appeals from a decision of the commissioner of the Washington Employment Security Department denying her request for unemployment benefits. The commissioner determined that Hoff was disqualified from receiving benefits because she failed to show good cause for voluntarily leaving her employment. The commissioner further determined that Hoff was liable for the repayment of overpaid benefits and the refund of conditional benefits. Because the commissioner's findings are supported by substantial evidence and the commissioner correctly applied the law, we affirm.

I

On September 13, 2007, David Zimmar, an attorney and solo practitioner, hired Hoff as his part-time legal assistant. Initially, Zimmar agreed to pay Hoff a weekly salary of $240 and to separately reimburse her for her parking expenses.

Zimmar was semi-retired and kept his office open Monday through Thursday. Zimmar did not require Hoff to work on a set hourly schedule; rather, he permitted her to work at any time she desired on the four days the office was open, so long as she completed her assignments. As a result, Hoff's compensation was not based on the number of hours she worked. Instead, she was paid weekly. Hoff testified that she initially worked for approximately four hours each day, but that in March 2009, she began working three hours each day.

Initially, Hoff worked for another employer, Bonnie's Seaside Cleaning, concurrently with her part-time position at Zimmar's law office. Eventually, Hoff's employment at Bonnie's Seaside Cleaning terminated. Thereafter, she began complaining to Zimmar that her compensation was not sufficient and requested a raise. In March 2009, Zimmar raised Hoff's weekly compensation to $290. However, Hoff continued to tell Zimmar that she was dissatisfied with her compensation. She also requested that Zimmar pay her parking expenses in advance instead of reimbursing her each week.

In October 2009, Zimmar informed Hoff of his plan to obtain a parking pass for her, for which he would be billed. Hoff appeared to have no objection to this new arrangement. Shortly thereafter, however, she walked out of Zimmar's law office. When Zimmar heard the office door close, he got up and found a note written by Hoff stating that she had quit. Hoff indicated in the note that her reason for quitting was her unhappiness with her compensation.

Hoff thereafter filed a claim for unemployment benefits, asserting that she quit her job because of "horrible working conditions." She also averred that Zimmar ignored her requests for raises. The Washington Employment Security Department denied Hoff's request for unemployment benefits. It concluded that she did not establish good cause for quitting her job. The Department also determined that Hoff was overpaid $119 in regular benefits and $5,661 in conditional benefits, and that she was therefore required to repay the Department a total of $5,780. It further determined that Hoff was at fault for the overpayment of regular benefits. Hoff sought administrative review of these decisions.

At the administrative hearing, Hoff provided several reasons for quitting. She testified that Zimmar frequently yelled at her and at others, which was against her religious beliefs; that Zimmar reduced her hours; that she developed involuntary eye spasms while working for Zimmar; and that one of Zimmar's former clients was involved in "business [he or she] shouldn't be doing." Following the administrative hearing, the administrative law judge (ALJ) affirmed the Department's decision and concluded that Hoff's reasons for quitting did not demonstrate "good cause" under the Employment Security Act. The ALJ also concluded that Hoff was not at fault in causing the overpayment of $119 in benefits she received, but was required to repay this amount. Although the ALJ cited to applicable authority that provides for circumstances in which the

repayment of overpaid benefits may be waived,[1] the ALJ did not explicitly determine whether Hoff was entitled to such a waiver. The ALJ further concluded that Hoff was liable for the refund of conditional benefits in the amount of $5,661.

Hoff thereafter petitioned the Department's commissioner to review the ALJ's order. The commissioner adopted the ALJ's findings of facts and conclusions of law and affirmed the ALJ's order. The commissioner also concluded that Hoff "was not at fault in causing the overpayment but is required to repay the regular overpayment pursuant to RCW 50.20.190 in the amount of $119." Similar to the ALJ's decision, the commissioner did not explicitly address whether Hoff was entitled to a waiver. He additionally ordered Hoff to repay $5,661 in conditional benefits she received.

Hoff's subsequent petition to the commissioner to reconsider its decision was denied. She thereafter appealed to the Snohomish County Superior Court, which affirmed the commissioner's decision.

Hoff appeals.

II

The Employment Security Act (Act), RCW Title 50, designates unemployment reserves to be used by "persons unemployed through no fault of their own." RCW 50.01.010. Unemployment compensation is intended to reduce "the disruption caused by involuntary inability to obtain employment and to

---

[1] The order cited to RCW 50.20.190, WAC 192-220-020, and WAC 192-220-030, stating that "[i]f the claimant is not at fault for bringing about the overpayment, the overpayment may be waived if requiring repayment by the claimant would be against 'equity and good conscience.'"

provide support for unemployed workers as they seek new jobs." Tapper v. Emp't Sec. Dep't, 122 Wn.2d 397, 407-08, 858 P.2d 494 (1993) (citing RCW 50.01.010). Pursuant to RCW 50.20.050(2)(a), an applicant for unemployment benefits is disqualified from receiving such benefits if "he or she has left work voluntarily without good cause." The Act enumerates eleven factual circumstances that constitute good cause. RCW 50.20.050(2)(b)(i)-(xi).[2] Failure

---

[2] RCW 50.20.050(2)(b) provides:

An individual is not disqualified from benefits under (a) of this subsection when:

(i) He or she has left work to accept a bona fide offer of bona fide work as described in (a) of this subsection;

(ii) The separation was necessary because of the illness or disability of the claimant or the death, illness, or disability of a member of the claimant's immediate family if:

(A) The claimant pursued all reasonable alternatives to preserve his or her employment status by requesting a leave of absence, by having promptly notified the employer of the reason for the absence, and by having promptly requested reemployment when again able to assume employment. These alternatives need not be pursued, however, when they would have been a futile act, including those instances when the futility of the act was a result of a recognized labor/management dispatch system; and

(B) The claimant terminated his or her employment status, and is not entitled to be reinstated to the same position or a comparable or similar position;

(iii)(A) With respect to claims that have an effective date before July 2, 2006, he or she: (I) Left work to relocate for the spouse's employment that, due to a mandatory military transfer: (1) Is outside the existing labor market area; and (2) is in Washington or another state that, pursuant to statute, does not consider such an individual to have left work voluntarily without good cause; and (II) remained employed as long as was reasonable prior to the move;

(B) With respect to claims that have an effective date on or after July 2, 2006, he or she: (I) Left work to relocate for the spouse's employment that, due to a mandatory military transfer, is outside the existing labor market area; and (II) remained employed as long as was reasonable prior to the move;

(iv) The separation was necessary to protect the claimant or the claimant's immediate family members from domestic violence, as defined in RCW 26.50.010, or stalking, as defined in RCW 9A.46.110;

(v) The individual's usual compensation was reduced by twenty-five percent or more;

(vi) The individual's usual hours were reduced by twenty-five percent or more;

(vii) The individual's worksite changed, such change caused a material increase in distance or difficulty of travel, and, after the change, the commute was greater than is customary for workers in the individual's job classification and labor market;

to establish good cause results in disqualification from benefits. RCW 50.20.050(2)(a).

If an applicant quit work because of a change in working conditions, as set forth in RCW 50.20.050(2)(b)(v)-(x), benefits will not be denied solely because the applicant worked for a "brief period of time" after the change took place. WAC 192-150-145(1). "Brief period of time" is defined as "the amount of time a reasonably prudent person would have continued working after the change in circumstances." WAC 192-150-145(2).

Hoff asserts that five of the eleven circumstances constituting good cause for quitting work apply to her and, therefore, she contends, she is eligible for unemployment benefits. In particular, Hoff maintains that she quit for the following reasons: illness; reduction of her usual compensation and hours by 25 percent or more; illegal activities in the worksite; and changes to her usual work that violated her religious convictions. RCW 50.20.050(2)(b)(ii),(v),(vi),(ix),(x).

III

The Washington Administrative Procedure Act (WAPA) governs judicial review of a final administrative decision of the commissioner of the Employment

---

(viii) The individual's worksite safety deteriorated, the individual reported such safety deterioration to the employer, and the employer failed to correct the hazards within a reasonable period of time;

(ix) The individual left work because of illegal activities in the individual's worksite, the individual reported such activities to the employer, and the employer failed to end such activities within a reasonable period of time;

(x) The individual's usual work was changed to work that violates the individual's religious convictions or sincere moral beliefs; or

(xi) The individual left work to enter an apprenticeship program approved by the Washington state apprenticeship training council. Benefits are payable beginning Sunday of the week prior to the week in which the individual begins active participation in the apprenticeship program.

Security Department. Tapper,122 Wn.2d at 402. In reviewing such a decision,

we sit in the same position as the superior court and apply the standards of the

WAPA directly to the administrative record that was before the agency. Tapper,

122 Wn.2d at 402; Daniels v. Emp't Sec. Dep't, 168 Wn. App. 721, 727, 281 P.3d

310, review denied, 175 Wn.2d 1028 (2012). Thus, we review the

commissioner's decision, not the administrative law judge's decision or the

superior court's ruling. Verizon Nw., Inc. v. Wash. Emp't Sec. Dep't, 164 Wn.2d

909, 915, 194 P.3d 255 (2008).

A commissioner's decision is considered "prima facie correct." Anderson

v. Emp't Sec. Dep't, 135 Wn. App. 887, 893, 146 P.3d 475 (2006). The party

asserting invalidity of an agency action carries the burden of proving the

invalidity. RCW 34.05.570(1)(a). Relief from an agency decision will be granted

if the reviewing court determines that the commissioner has erroneously

interpreted or applied the law, the order is not supported by substantial evidence,

or it is arbitrary or capricious. RCW 34.05.570(3)(d),(e),(i); Tapper, 122 Wn.2d at

402.

We review findings of fact for substantial evidence. Smith v. Emp't Sec.

Dep't, 155 Wn. App. 24, 32, 226 P.3d 263 (2010). We review an agency's

interpretation or application of the law de novo, giving substantial weight to the

agency's interpretation of the statutes it administers. Smith, 155 Wn. App. at 32;

Honesty in Envtl. Analysis & Legislation v. Cent. Puget Sound Growth Mgmt.

Hearings Bd., 96 Wn. App. 522, 526, 979 P.2d 864 (1999). Moreover, a

reviewing court will not substitute its judgment for that of the agency regarding witness credibility or the weight of the evidence. Smith, 155 Wn. App. at 35.

IV

Hoff first asserts that she had good cause to quit because she developed an illness caused by work-related stress, thereby entitling her to receive unemployment benefits. We disagree.

Under RCW 50.20.050(2)(b)(ii), a claimant is not disqualified from receiving unemployment benefits if he or she quit because of an illness. However, the claimant must establish that (1) "[t]he separation was necessary because of the illness or disability," (2) he or she left work primarily because of such illness, and (3) he or she "pursued all reasonable alternatives to preserve his or her employment status" unless seeking such alternatives would have been futile. RCW 50.20.050(2)(b)(ii); WAC 192-150-055(a).

Hoff fails to establish that her eyelid spasms made it necessary for her to leave her work. "Necessary" means that the conditions are of such degree or severity that they would cause a reasonably prudent person acting under similar circumstances to quit work. WAC 192-150-055(c)(4). Here, at the administrative hearing, Hoff testified that her optometrist recommended that she quit her job because of stress-induced spasms. In support of this contention, she brought to the ALJ's attention a letter written by her optometrist. Contrary to Hoff's testimony, the letter recommended that Hoff apply warm compresses and reduce stress; it did not, in fact, advise her to leave her job.

Similarly, Hoff failed to show that she left her position primarily because of her illness, as required by WAC 192-150-055(1)(a). Instead, the record demonstrates that her primary reason for quitting was dissatisfaction with her weekly compensation. Zimmar testified that prior to quitting, Hoff repeatedly expressed frustration with the amount of her compensation. In addition, the note that Hoff left for Zimmar stated that she was unhappy with her compensation and that this was her reason for quitting. The note did not mention her eyelid spasms or any other medical issue as constituting the motivation for her departure.

Nor did Hoff establish that she exhausted all reasonable alternatives to preserve her employment status. A claimant must show that he or she pursued all reasonable alternatives "by requesting a leave of absence, by having promptly notified the employer of the reason for the absence, and by having promptly requested reemployment when again able to assume employment." RCW 50.20.050(2)(b)(ii)(A). Hoff did not make Zimmar aware of her medical condition by either discussing it with him or by showing him the optometrist's letter. Hoff likewise did not ask for a leave of absence prior to quitting. Moreover, Hoff did not demonstrate that pursuing these alternatives would have been futile. Accordingly, the commissioner properly concluded that Hoff failed to establish that she had good cause for quitting because of an illness.

V

Hoff next contends that she had good cause to quit because Zimmar reduced her usual hours by 25 percent or more in March 2009. Again, we disagree.

A claimant is not disqualified from receiving unemployment benefits if his or her usual hours were reduced by 25 percent or more. RCW 50.20.050(2)(b)(vi). Good cause for quitting under this section requires a showing that the employer caused the reduction in the claimant's hours. WAC 192-150-120(2). Furthermore, pursuant to WAC 192-150-145(1), a claimant must prove that the alleged reduction in hours was the motivating factor for quitting.

At the administrative hearing, Hoff testified that her hours were reduced from four hours per day to three hours per day. However, Zimmar testified that Hoff did not work in accordance with a predetermined or agreed-upon schedule. Instead, Zimmar gave her the freedom to determine the time and hours she would work, so long as she completed her assignments.[3] Moreover, Zimmar explained that Hoff's compensation was not based on the number of hours she worked. Rather, she was paid a weekly salary. Thus, Zimmar was not responsible for Hoff's alleged reduction in hours. Additionally, as the ALJ correctly concluded in its order, "[Hoff] received more money for working fewer hours in light of the increase in her weekly pay."

Hoff also failed to show that the purported reduction in hours was the motivating factor for leaving employment. As previously discussed, it appears, instead, that she quit primarily because she was displeased with her weekly salary. Nonetheless, Hoff continued to work at Zimmar's office for several

---

[3] The ALJ found Zimmar's testimony more credible than Hoff's testimony on this issue.

months after her hours were allegedly reduced. Accordingly, Hoff did not substantiate her claim for good cause as based on a reduction in her hours.[4]

VI

Hoff next contends that illegal activities transpired at the worksite and that, accordingly, she had good cause to quit. We disagree.

A claimant is not disqualified from receiving unemployment benefits under the Act if he or she quit her work because illegal activities were taking place in the worksite. RCW 50.20.050(2)(b)(ix). However, the claimant must establish that he or she reported such activities to the employer, and that the employer failed to end such activities within a reasonable period of time. RCW 50.20.050(2)(b)(ix).

Hoff's claim is unavailing because, first, she did not support her contention that illegal activities took place by describing or identifying such activities. Hoff merely testified that "it was against [her] beliefs to do work for a client that engages in activities in their business they shouldn't be doing." Second, Hoff did not show that she reported these alleged improper activities to Zimmar. Finally, Hoff did not establish that these purportedly illegal activities were a motivating factor in her decision to quit. Hoff therefore failed to demonstrate good cause for quitting under RCW 50.20.050(2)(b)(ix).

---

[4] Hoff asserts on appeal that she had good cause to quit under RCW 50.20.050(b)(v) ("The individual's usual compensation was reduced by twenty-five percent or more."). She did not raise this claim before the ALJ and the record does not support it.

- 11 -

VII

Hoff next contends that Zimmar's yelling violated her religious convictions, thereby constituting good cause to quit under the Act. This claim is also without merit.

A claimant is eligible to receive unemployment benefits under the Act if his or her "usual work was changed to work that violates [his or her] religious convictions or sincere moral beliefs." RCW 50.20.050(2)(b)(x). The claimant must establish that the change in work required the claimant to violate his or her religious beliefs or sincere moral convictions. WAC 192-150-140(2)(b). However, mere disapproval of the employer's method of conducting business is not good cause for leaving work. WAC 192-150-140(2)(b). Finally, the claimant must show that he or she notified the employer that the work violated his or her religion or sincere moral beliefs, unless doing so would have been futile. WAC 192-150-140(2)(c).

Hoff testified that Zimmar yelled at her and others at the worksite. She claims that as a Baptist, working in an environment in which yelling occurs runs counter to her religious beliefs. However, she described only one incident in which Zimmar yelled at her. Moreover, although Hoff testified that she informed Zimmar that she could not tolerate such conduct, the ALJ found more credible the testimony of Zimmar, who stated that Hoff never brought this matter to his attention. Hoff also did not demonstrate that Zimmar caused a change in her work that required her to violate her religious beliefs. Nor did she show that the yelling was a motivating factor that caused her to quit.

VIII

Hoff asserts, finally, that the commissioner erred by ordering her to repay unemployment benefits that she received as overpayment. We disagree.

Pursuant to RCW 50.20.190(1), an individual who received unemployment benefits to which he or she was not entitled is liable for the repayment of the amount overpaid, unless otherwise relieved of the obligation pursuant to RCW 50.20.190(2). "The commissioner may waive an overpayment if the commissioner finds that the overpayment was not the result of fraud, misrepresentation, willful nondisclosure, or fault attributable to the individual and that the recovery thereof would be against equity and good conscience." RCW 50.20.190(2).

Here, the commissioner ordered Hoff to repay overpaid benefits in the amount of $119. The commissioner's decision did not explicitly address waiver of the overpayment of benefits. However, in ruling that Hoff was not at fault in causing the overpayment but was required to repay it, the commissioner cited to the applicable statute, thus implicitly determining that Hoff was not entitled to a waiver. Accordingly, the commissioner did not err in ordering Hoff to repay such benefits pursuant to RCW 50.20.190.

The commissioner further determined that Hoff was liable for the refund of conditional benefits in the amount of $5,661. A conditional payment is a payment issued to a claimant after he or she has "already received benefits but during a period in which the department questions [his or her] continued eligibility for benefits." WAC 192-100-070(1). The claimant's right to receive conditional

- 13 -

payments is conditioned on the Department's finding that he or she is eligible for such benefits during the weeks in question. WAC 192-100-070(1). Overpayments of conditional benefits may not be waived by the commissioner and must be refunded to the Department. RCW 50.20.190, WAC 192-220-017(3)(c).

Here, Hoff received conditional payments in the amount of $5,661 after the Department notified her that it was questioning her eligibility to receive unemployment benefits. On February 16, 2010, the Department determined that Hoff did not have good cause to quit work and denied her benefits. Because we conclude that the commissioner properly determined that Hoff voluntarily quit without good cause, thereby disqualifying her from receiving unemployment benefits, we also conclude that the commissioner properly determined that Hoff must refund the conditional benefits.

Affirmed.

We concur:

- 14 -