IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | | |
|---|---|---|
| CORPORATE SECURITY, LLC, | ) | No. 77138-8-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| STATE OF WASHINGTON, | ) | |
| EMPLOYMENT SECURITY | ) | |
| DEPARTMENT, | ) | |
| | ) | |
| Appellant. | ) | FILED: October 22, 2018 |

2018 OCT 22 AM 9: 44
COURT OF APPEALS DIV I
STATE OF WASHINGTON
FILED

ANDRUS, J. — The Employment Security Department (Department) appeals the superior court's order denying unemployment benefits to Myron Pinkney. We reverse the superior court's order and reinstate the agency decision finding Pinkney eligible for benefits.

## FACTS

Myron Pinkney applied for a security officer position with Corporate Security, LLC on September 25, 2015. On the application, Pinkney was asked if he had ever been convicted of a crime; and he checked "Yes." During the application and training process, Pinkney disclosed to Shawn McCarthy, Corporate Security's human resources recruiter, that he had a prior assault conviction and a gross misdemeanor drug conviction. Pinkney spoke several

times with McCarthy and another person within the company about both cases and provided them with copies of some of his court records.

Corporate Security conducted a criminal records search that disclosed two cases—a 2012 fourth degree assault charge in Kent Municipal Court and a 2013 felony drug charge in Snohomish County—both of which were identified as having been dismissed. Based on what Pinkney had disclosed, McCarthy found the background check information inconsistent and confusing. But after consulting with Dr. William Cottringer, Executive Vice President for Corporate Security, they decided to hire Pinkney, issue a temporary security guard license to him, and await "a second opinion for a more elaborate background investigation" from the agency that would issue the permanent license. McCarthy testified that Dr. Cottringer wanted the Washington State Department of Licensing (DOL) to make the decision based on its own background investigation. McCarthy did not want to wait for the results of DOL's investigation before hiring Pinkney because that would delay hiring him for two months.

On October 1, 2015, with the company's help, Pinkney applied for a private security guard license with DOL. On the license application, he listed a 1998 conviction for "violation of a controlled substance," and a 2013 conviction for "solicitation of drugs (possession of paraphernalia)."[1] He offered to "provide a copy of [his] record upon request."

---

[1] Although Pinkney identified the solicitation conviction as occurring in 2013, the judgment and sentence on the conviction was entered on January 21, 2014. DOL based its decision to deny the license on this 2014 gross misdemeanor conviction.

DOL notified Pinkney, on December 2, 2015, that it intended to deny his application for a private security guard license. According to Pinkney, DOL indicated that the 2014 solicitation conviction was a disqualifying crime. Pinkney subsequently learned that because he had been sentenced on a DUI, along with a drug solicitation charge, his sentence included five years of probation, the term of which had not expired. Because Pinkney did not have a probation officer, had completed a court-ordered drug and alcohol assessment, and had attended the DUI victim's panel, he was under the mistaken impression that he had completed all of the terms of his probation and that if he did not get into any trouble for the next year, the case would be dropped. Pinkney admitted he provided erroneous information to Corporate Security, but he "never tried to hide it or – or mislead them into believing . . . that anything was different than what [he] said." He was "completely straight up with them because [he] appreciated the fact that they were giving [him] a chance to have a job."

DOL denied his request for a security guard license by letter dated January 5, 2016. Pinkney appealed the decision but was unsuccessful in reversing the agency's decision. Corporate Security terminated his employment on January 11, 2016, after learning the outcome of the appeal. McCarthy testified that the company waited to terminate Pinkney until it knew that DOL would not license him.

Pinkney applied for unemployment benefits. In responding to a Department inquiry as to whether Pinkney did anything wrong at work after he was hired, Dr. Cottringer wrote:

> No. But if you review all these documents carefully as we have, you will come to the same conclusion as DOL, that he was in fact properly/legally denied his security guard license for disqualifying "convictions" that were not really dismissed[,] and the dates of these offenses were grossly mixed up in offense types and dates and inclusion on his applications . . . . And later, ESD earnings reports showed serious discrepancies on the jobs he reported on his application[.] This information is available to you, but not relevant because this dishonesty was not the reason we terminated him. We clearly discharged him with the DOL mandate we could not legally work him as a security guard because he wasn't licensable. That is the real bottom line to all of this.

The Department denied benefits, reasoning that his termination was due to "misconduct" connected to his employment.

Pinkney appealed the Department's benefits decision. At the administrative hearing, Dr. Cottringer confirmed the information provided to the Department: Pinkney was discharged because he was ineligible to obtain a license and work as a security guard. Dr. Cottringer learned that DOL's more elaborate background investigation discovered that one of Pinkney's cases was still open with unfulfilled conditions, which he thought disqualified Pinkney for a security guard license under RCW 18.170.030. When the ALJ asked Dr. Cottringer who made the decision to terminate Pinkney, he replied, "it was made for us by DOL. I just carried it out." Dr. Cottringer confirmed he told Pinkney he was discharged because he was "ineligible for licensure." At the conclusion of

the administrative hearing, Dr. Cottringer stated that Corporate Security did not discharge Pinkney for dishonesty.

The ALJ granted Pinkney's request for unemployment benefits, finding that Pinkney disclosed his criminal history to Corporate Security, and concluding that the company had not shown by a preponderance of the evidence that Pinkney engaged in job-related misconduct.

Corporate Security filed a petition for review to the Department's Commissioner's Review Office. It argued that Pinkney's failure to reveal complete details of his criminal history constituted dishonesty and was a basis to deny benefits.

The Commissioner rejected Corporate Security's petition. It found that Pinkney had verbally advised Corporate Security of at least some of his criminal background. Corporate Security was aware of this history because its own criminal history check revealed an April 2013 offense in Snohomish County and a March 2012 King County offense. Although Corporate Security was "admittedly uncertain as to the extent of [Pinkney's] criminal background, [it] still decided to hire [him]." The Commissioner found that Corporate Security chose to hire Pinkney immediately and to train him while DOL conducted a more elaborate investigation into Pinkney's background through the licensing process. The Commissioner further found the basis of DOL's denial of a security guard license for Pinkney was that he had been convicted of a crime on January 21, 2014. The

Commissioner also found that Corporate Security waited to terminate Pinkney until after he unsuccessfully appealed DOL's decision.

Based on these findings, the Commissioner concluded Corporate Security

was on notice, even before hiring [Pinkney], that [Pinkney's] criminal background could prevent him from becoming licensed through DOL. However, instead of waiting for the outcome of [Pinkney's] DOL license process, [Corporate Security] decided to hire [Pinkney] and begin training him. DOL's decision to deny [Pinkney's] license application rendered [Pinkney] incapable of doing the job for which he was hired. [Pinkney] became unemployed through no fault of his own, but through [Corporate Security's] decision to hire him in spite of the possibility that [Pinkney] would not meet the requirements of the job. [Corporate Security] failed to show that [Pinkney] acted in willful disregard of its interests as defined at RCW 50.04.294. Thus, [Pinkney] is not disqualified pursuant to RCW 50.20.066.

The Commissioner denied Corporate Security's petition for reconsideration.

In its petition for review to the superior court, Corporate Security again argued that Pinkney was terminated due to misconduct during his employment application process because Pinkney mischaracterized and omitted material facts about his criminal record. The superior court granted Corporate Security's petition and reinstated the Department's initial denial of benefits.

The Department appeals.

## ANALYSIS

Washington's Administrative Procedure Act (APA), chapter 34.05 RCW, governs judicial review of employment benefits decisions. Michaelson v. Emp't Sec. Dep't, 187 Wn. App. 293, 298, 349 P.3d 896 (2015). The APA allows reversal of an administrative decision if it is based on an error of law, if it is not

based on substantial evidence, or if it is arbitrary or capricious. RCW 34.05.570(3)(d), (e), (i); Michaelson, 187 Wn. App. at 298.

Although this is an appeal from the superior court, this court reviews the Commissioner's decision, not the ALJ's findings or those of the superior court. Michaelson, 187 Wn. App. at 298. Because the Commissioner did not adopt any of the ALJ's findings or conclusions, we review the Commissioner's decision only. Michaelson, 187 Wn. App. at 298. This court considers the Commissioner's decision as prima facie correct, and the burden of demonstrating invalidity of the decision is on the party asserting invalidity, here Corporate Security. Smith v. Emp't Sec. Dep't, 155 Wn. App. 24, 32, 226 P.3d 263 (2010).

The sole issue on appeal is whether the Commissioner erred in concluding that Pinkney was not discharged for misconduct. Corporate Security contends the Commissioner's order is not supported by substantial evidence, is the result of erroneously interpreting or applying the law, and is arbitrary or capricious. The company argues Pinkney was dishonest during the application process because he misrepresented to Corporate Security that the gross misdemeanor was dismissed, when in fact, he was on probation. The company maintains that had he disclosed that he was on probation, it would have terminated the hiring process. Accordingly, Corporate Security argues the Commissioner should have found these misrepresentations amounted to dishonesty, making Pinkney ineligible for unemployment benefits.

A. Substantial Evidence

The Commissioner's findings of fact are reviewed for substantial evidence in light of the entire record. Michaelson, 187 Wn. App. at 298. "Substantial evidence is evidence that would persuade a fair-minded person of the truth or correctness of the matter." Id. at 298-99. This court defers to the factual decisions and views the evidence in the light most favorable to the party who prevailed in the highest forum with fact-finding authority; here, this is the Department. Id. at 299.

Whether an employee committed misconduct is a mixed question of fact and law, but this court does not substitute its judgment for that of the agency as to the facts. Tapper v. Emp't Sec. Dep't, 122 Wn.2d 397, 403, 858 P.2d 494 (1993). "[I]nstead, the factual findings of the agency are entitled to the same level of deference which would be accorded under any other circumstance." Id. Thus, this court will not substitute its judgment on witnesses' credibility or the weight given to conflicting evidence. Michaelson, 187 Wn. App. at 299. Unchallenged findings of fact are accepted as verities on appeal. Id.

The process of applying the law to those facts is a question of law reviewed de novo. Tapper, 122 Wn.2d at 403. Nevertheless, this court gives substantial weight to the Commissioner's interpretation of the law given the agency's special expertise. Michaelson, 187 Wn. App. at 299.

RAP 10.3(h) provides that a respondent challenging an administrative agency's adjudicative order under chapter RCW 34.05 "shall set forth a separate concise statement of each error which a party contends was made by the agency

issuing the order, together with the issues pertaining to each assignment of error." Corporate Security assigned error to the Commissioner's legal conclusions but did not assign error to any of the Commissioner's findings of fact. Generally, when a party challenging an agency action does not challenge the agency's findings of fact, this court deems these true on appeal and limits review to determining whether the findings support the conclusions. Smith, 155 Wn. App. at 32. This court in Smith recognized, however, that RAP 1.2(a) gives us the discretion to review an agency's findings "where proper assignment of error is lacking but the nature of the challenge is clear and the challenged findings are set forth in the party's brief." Id. at 33.

In this case, Corporate Security challenges the evidentiary support for the Commissioner's findings only in passing. Its briefing instead focuses on what it characterizes as the Commissioner's misapplication or incorrect interpretation of the law. When proper assignment of error is lacking, the challenged findings must be perfectly clear and extensively discussed in the brief. Id. at 33-34. The only finding of fact Corporate Security clearly discusses is the Commissioner's finding that Pinkney "verbally advised [Corporate Security] regarding at least some of his criminal background."[2] We conclude this finding is supported by substantial evidence.

---

[2] Corporate Security also argues that the fact that Pinkney was still on probation for the gross misdemeanor is why he was denied a private security guard license. But the security guard licensing statute does not specify that an existing probation or unfulfilled probation conditions disqualify someone from receiving a private security guard license. Rather, it provides that to obtain a private security guard license, the applicant must

Pinkney testified that he disclosed his criminal history to Corporate Security to the best of his knowledge. But Corporate Security challenges Pinkney's testimony that he did not understand that he was still on probation at the time he applied for a job, arguing that this testimony is not credible. On appeal, we do not substitute our judgment for that of the agency regarding witness credibility. Michaelson, 187 Wn. App. at 299. According to the record, Pinkney disclosed criminal convictions on both his employment application and his security guard license application. The record also shows that after Pinkney's disclosures during the hiring process and Corporate Security's initial background check, the company did not foresee a licensing problem. The substantial evidence standard is deferential; this court views the evidence in the light most favorable to the party that prevailed before the Commissioner. Affordable Cabs, Inc. v. Emp't Sec. Dep't, 124 Wn. App. 361, 367, 101 P.3d 440 (2004). Based on this record, there is substantial evidence supporting the Commissioner's finding that Pinkney advised Corporate Security regarding at least some of his criminal background.

---

[n]ot have been convicted of a crime in any jurisdiction, if the director determines that the applicant's particular crime directly relates to his or her capacity to perform the duties of a private security guard, and the director determines that the license should be withheld to protect the citizens of Washington state.

RCW 18.170.030(3). DOL's notice to Pinkney indicated that he could reapply for a license six years after the date of his conviction. It said nothing about probation. Corporate Security does not challenge the Commissioner's finding that the basis of DOL's denial of a security guard license for Pinkney was that he had been convicted of a crime on January 21, 2014. Therefore, the record does not support Corporate Security's contention that Pinkney's probation status caused DOL to deny his license application.

At oral argument, Corporate Security contended that the Commissioner erred by not making a finding that Pinkney misrepresented his criminal history during the application process. At the agency level, it was Corporate Security's burden to establish misconduct by a preponderance of the evidence. Corporate Security argued in its petition for review to the Commissioner, as well as on reconsideration, that Pinkney's failure to reveal the complete details of his criminal history was per se dishonest. "If no finding is entered as to a material issue, it is deemed to have been found against the party having the burden of proof." Pacesetter Real Estate, Inc. v. Fasules, 53 Wn. App. 463, 475, 767 P.2d 961 (1989). Additionally, this court does not substitute its judgment on the facts and, instead, defers to the Commissioner's factual decisions. Michaelson, 187 Wn. App. at 299. Therefore, we reject this argument and conclude the Commissioner did not find that Pinkney misrepresented his criminal history to Corporate Security.

B. Error of Law

Next, we turn to applying the law to the Commissioner's findings of fact.

Corporate Security argues that because Pinkney made false statements and material omissions about his criminal history during the hiring process and when applying for a security guard license, the Commissioner should have found that Pinkney engaged in misconduct even if he was not discharged for that reason. Corporate Security appears to misunderstand the unemployment compensation statute.

The Employment Security Act provides compensation to individuals involuntarily unemployed "through no fault of their own." RCW 50.01.010; Tapper, 122 Wn.2d at 407. An individual is ineligible for unemployment benefits if he or she is "discharged or suspended for misconduct connected with his or her work." RCW 50.20.066(1) (emphasis added). Misconduct is defined by statute and includes "willful or wanton disregard of the rights, title, and interests of the employer," and "[d]ishonesty related to employment, including but not limited to deliberate falsification of company records, theft, deliberate deception, or lying." RCW 50.04.294(1)(a), (2)(c).

Corporate Security admitted on several occasions that Pinkney was discharged because he could not obtain a private security guard license, not because he committed misconduct during the application process, as it argued in its trial brief to the superior court. Four times during the administrative hearing, Corporate Security representatives stated Pinkney was not discharged for dishonesty. First, Dr. Cottringer testified Pinkney was discharged because DOL's more in-depth background check discovered a case that was not dismissed. Next, when asked who made the decision to discharge Pinkney, Dr. Cottringer replied that "it was made for us by DOL. I just carried it out." McCarthy testified that Pinkney was not terminated until the company knew that DOL would not issue him a security guard license. Finally, Dr. Cottringer stated that Corporate Security

> had to terminate Mr. Pinkney's employment according to DOL qualifications for licensure, which they denied his license and we

could not continue his employment. He was not discharged for dishonesty, as he said.

He was discharged because DOL would not license him and we could not work him as a security guard.

Elsewhere in the record, Dr. Cottringer admitted that Pinkney was not discharged for misconduct. Although there were

serious discrepancies on the jobs he reported on his application . . . this dishonesty was not the reason we terminated him. We clearly discharged him with the DOL mandate we could not legally work him as a security guard because he wasn't licensable. . . . He was terminated because DOL, in effect, directed us to do so, because he could not legally work as a security guard, when his license was duly denied by them.

Therefore, based on the plain language of the statute, Pinkney was not discharged for misconduct. Rather, he was discharged because he could not do the work for which he was hired because he could not obtain a security guard license. Thus, we conclude Corporate Security has not met its burden to show that the Commissioner's decision was invalid.

C. Arbitrary and Capricious

Lastly, Corporate Security argues that the Commissioner's decision is arbitrary and capricious because it did not find that Pinkney committed misconduct and was terminated for that misconduct. We reject this argument.

"[A]gency action is arbitrary and capricious if it is willful and unreasoning and taken without regard to the attending facts or circumstances." Wash. Indep. Tel. Ass'n v. Wash. Utils. & Transp. Comm'n, 148 Wn.2d 887, 905, 64 P.3d 606 (2003). The Commissioner reviewed the entire record, including the audio

recording of the administrative hearing. The Commissioner's decision is well-reasoned and follows logically from its findings of fact. The Commissioner found that, regardless of whether Pinkney revealed the complete details of his criminal history, Corporate Security was admittedly uncertain but still decided to hire him. After DOL's more elaborate investigation revealed a disqualifying conviction that affected Pinkney's ability to perform the duties of a private security guard, therefore, making him ineligible to receive a security guard license, Corporate Security terminated Pinkney. As a result, Pinkney "became unemployed through no fault of his own, but through the employer's decision to hire him in spite of the possibility that [Pinkney] would not meet the requirements of the job." Therefore, we conclude the Commissioner's decision was neither arbitrary nor capricious.

We reverse the superior court's order and reinstate the Commissioner's order finding Pinkney eligible for unemployment benefits.

Andrus, J.

WE CONCUR:

Mann, A.C.J.

Becker, J.

- 14 -