# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| TINA BEACH, | No. 49688-7-II |
| Respondent, | |
| v. | |
| STATE OF WASHINGTON EMPLOYMENT SECURITY, | UNPUBLISHED OPINION |
| Appellant. | |

LEE, J. — The Employment Security Department ("Department") appeals a superior court order reversing the Department commissioner's decision that Sander Resources, LLC ("the Company"), terminated its employee, Tina Beach, for committing misconduct, which disqualified her from receiving unemployment benefits. On appeal, Beach argues that (1) substantial evidence does not support the commissioner's findings that Beach (a) made unauthorized charges on the employer's credit card, (b) did not adequately account for personal expenses, and (c) was terminated for actions constituting misconduct; and (2) the commissioner erroneously applied the law to the facts when she concluded that Beach's actions constituted misconduct as a (a) willful or wanton disregard of the rights, title, and interests of the employer; (b) violation of a reasonable

employer policy that was known to Beach; and (c) deliberate violation or disregard of standards of behavior which the employer has the right to expect of an employee.

We hold that (1) substantial evidence supports the commissioner's findings and (2) the commissioner did not err in concluding that Beach committed misconduct. Accordingly, we affirm the commissioner's decision.

## FACTS

### A.    BACKGROUND

Beach began working for the Company on July 13, 2014. Beach's work involved travel around the country two to three weeks per month. Beach spoke with her immediate supervisor, Lindsay Sander, about the possibility of flying to Billings, Montana to be with her children after a business trip instead of flying home to Pasco, Washington if the airfare was cheaper. Sander agreed to that arrangement.

### B.    THE COMPANY'S POLICIES

The Company did not have written policies or rules regarding the use of company funds, but Sander verbally reminded employees of the rules and procedures during team meetings and conference calls. The Company's expense policy required business expenses to be charged to the Company's credit card so that those expenses could be tracked on the Company's financial accounting system.

At the beginning of 2015, Sander made it clear to employees that they needed to restrain their spending to pass along savings to their clients and that they "were going to be careful with every dime [they] spent." Administrative Record (AR) at 150. This was talked about in almost

every meeting they had and it was made clear that extraneous expenses were not necessary nor appropriate. Beach was aware of this policy and Sander had spoken to Beach about her spending.

C.      BEACH'S PURCHASES ON THE COMPANY'S CREDIT CARD

Beach did not receive a Company credit card until October 2014. Prior to receiving a corporate credit card, Beach was told to put large business-related purchases on Sander's corporate credit card. If Beach had smaller business expenses before she received her corporate credit card, she was expected to fill out a cash reimbursement slip, which was due the final week of the billing month.

From July to October 2014, Beach charged all of her business expenses on her personal credit card. Beach carried business expenses on her personal credit card until January 2015. Sander advised Beach that if she put business expenses on her personal credit card, then she should submit an expense report and she would be reimbursed. Beach submitted expense reports for reimbursement that were "absolutely a mess," inaccurate, and not kept up-to-date, which resulted in some lag time for reimbursement. AR at 213. The Company had to go back and speak with Beach because the checks that were provided to her for her expenses did not match the expense forms that she submitted.

After Beach received a company credit card, she charged personal expenses on the Company's credit card without first seeking prior approval to do so. At the same time, Beach continued to charge business expenses on her personal credit card without seeking prior approval to do so. Beach felt that all the expenses could be reconciled. Beach was warned that large business expenses, such as flights and hotels, should be charged on the Company's credit card.

On December 6, Beach used the Company's credit card to purchase cell phone tracking software. Beach bought the software as a gift to her fiancé and used the Company's credit card because she wanted it to be a surprise. Beach did not ask for permission to charge the gift on the Company's credit card, but asked Sander afterwards whether she wanted Beach to reimburse the Company for the charge or whether the charge would be taken out of any amounts the Company owed to Beach. Sander indicated that the personal charge would be taken out of what the Company owed Beach.

On December 15, Beach was in Portland, Oregon to visit a potential client. Beach used the Company's credit card to purchase a cord for her computer to ensure that she was connected and available for work.

On January 28, 2015, Beach used the Company's credit card to purchase an airline ticket to Biloxi, Mississippi to visit her sister. Beach knew that this was a personal expense, so she reimbursed the Company.

On February 10, Beach used the Company's credit card to purchase an airline ticket from Las Vegas, Nevada to Billings, Montana, and then back to Denver, Colorado. Beach had no business reason to be in Billings. Beach stated that she flew to Billings because she thought that she had to be in Billings for a court appearance on February 18. Beach did not reimburse the Company for the airline charge for her flights. However, Beach said that she reimbursed the Company for her flight from Denver to Seattle because she had to be back in Seattle on February 20 for meetings.

4

Beach also incurred charges on the Company's credit card for an airline ticket to Orlando through Las Vegas,[1] and an Adobe Systems purchase.[2] Beach did not reimburse the Company for these charges.

Sander detailed Beach's unauthorized expenses on the Company credit card at a conference. She explained that Beach was supposed to attend the conference, but Beach made additional charges to the Company credit card for events at the conference that were not authorized. This included extra tickets to the conference casino night and closing reception, which Beach did not use, and a leadership seminar at the conference.

Beach admitted that she bought two tickets to the casino night. One ticket was charged to the Company and the other was charged to her personal credit card. Beach said that she was aware of additional tickets being purchased, but denied purchasing them. Beach also admitted that she did not request permission to attend the leadership seminar at the conference, but she registered for the seminar believing it was a benefit for the Company. Beach stated that she believed she was acting in the best interest of the Company at all times.

D.      BEACH'S TERMINATION AND DENIAL OF BENEFITS

On March 11, Beach was discharged from her employment with the Company. Sander testified that Beach was terminated for misusing the Company's credit card and corporate funds numerous times. Sander had talked to Beach about her spending of company funds on multiple

---

[1] Beach was in Las Vegas on vacation to watch a basketball tournament.

[2] Beach reported that the Adobe purchase was for developing brochures for clients and allowed by Sander.

occasions. Beach stated that Sander told her that she was letting her go because she let the team down by missing the team dinner.

After her discharge from employment, Beach filed for unemployment benefits with the Department. On April 29, the Department denied benefits because the Company reported that Beach was discharged for unauthorized use of the Company's credit card. The Department determined that this constituted work-related misconduct.

E.      ADMINISTRATIVE REVIEW

On May 20, Beach appealed the Department's denial of benefits. A hearing was held in front of an administrative law judge (ALJ). The ALJ reversed the Department's determination and found that misconduct had not been established.

On July 30, the Company petitioned for a commissioner to review the ALJ's decision reversing the Department's determination. The commissioner determined that there was insufficient evidence upon which to fairly decide the case and remanded the case for a hearing de novo to determine Beach's eligibility for benefits.

On October 9, a hearing was held in front of a different ALJ. Evidence was presented as outlined above. The ALJ issued an order, finding, in pertinent part:

3. The claimant's work for the employer involved extensive travel. The employer initially reimbursed expenses incurred by the claimant. To be reimbursed, the claimant was required to submit a request for reimbursement of her expenses and the receipts to reconcile the reimbursement request.

4. Expense reimbursement requests are due at the end of each month; employees are advised to file reimbursement requests. The claimant filed reimbursement requests, and the employer issued checks for reimbursement, but then the claimant would update her electronic reimbursement request, causing delay in reimbursement of the additional expenses. As a result, discussions about reconciliation of the reimbursement requests took place between the claimant and the employer, Ms. Sander.

6

5. The claimant was issued a credit card by the employer for use for business expenses. The claimant used the business credit card for both business and personal expenses. The claimant reimbursed the employer for some of the personal expenses charged to the employer's credit card, but she did not adequately account for personal expenses, and she did not produce receipts or explain all the expenses charged. The employer required, as a matter of policy, that employees maintain receipts for purchases on the employer's credit card.

6. The employer had discussions with the claimant about cutting expenses, and also about reconciling the expenses charged. The claimant did not adequately explain the charges made. Although some expenses were explained, and some were reimbursed to the employer both before and after the claimant was discharged, she charged personal expenses on her employer's credit card without obtaining authorization to do so.

7. Among the unauthorized charges the claimant made on the employer's credit card are airline expenses which were never documented by the claimant or explained. *See* Exhibit 99. The claimant did not obtain authorization to attend a "Courageous Leadership" seminar, and charged the fee for attendance of $205.00 to the employer's account. She purchased extra tickets to events, without authorization, and charged them to the employer's account. She purchased unauthorized "extras" while traveling and charged the expenses to the employer. *Id.*

8. The employer advised the claimant not to purchase airline "extras" while traveling, unless purchasing the extra amenities as a personal expense. The claimant purchased such amenities using the employer's credit account.

AR at 733-34.

The ALJ affirmed the Department's determination that a preponderance of evidence established that Beach committed misconduct by intentionally misusing the Company's credit card, incurring unauthorized expenses, not following established procedures in requesting reimbursement of expenses or in accounting for personal expenses incurred on the employers account, charging personal expenses on the employer's account without authorization, and failing to account for those personal expenses. The ALJ concluded, "The employer has established, by a

preponderance of the evidence that [Beach] was discharged for misconduct and is therefore ineligible for unemployment benefits." AR at 736 (Conclusion of Law (CL) 9).

On November 9, Beach petitioned for a commissioner to review the ALJ's decision. The commissioner expressly adopted the ALJ's findings of fact and conclusions of law and affirmed the ALJ's decision. The commissioner concluded that Beach's "discharge precipitating conduct ha[d] been shown, by a preponderance of substantial evidence of record, to have been in willful and wanton disregard of the rights, title and interests of her employer." AR at 761. Specifically, Beach's "conduct was in violation of a reasonable employer policy, which policy was known or should have been known to" Beach, her "conduct also evinced a deliberate violation and disregard of standards of behavior which an employer has the right to expect of an employee," and misconduct had been established. AR at 761.

F.      APPEAL TO SUPERIOR COURT

On December 29, Beach appealed to the Thurston County Superior Court. The superior court concluded that Beach's actions were "not misconduct; the commissioner's Order to the contrary misinterpreted and misapplied the law and is therefore reversed under RCW 34.05.570(3)(d)." CP at 54.

The Department appeals.

ANALYSIS

A.    LEGAL PRINCIPLES

1.    Standard of Review

Washington's Administrative Procedure Act (APA), chapter 34.05 RCW, governs judicial review of employment benefits decisions. *Smith v. Emp't Sec. Dep't*, 155 Wn. App. 24, 32, 226 P.3d 263 (2010). We sit in the same position as the superior court and apply the APA standards directly to the administrative record. *Id.*

On appeal of a final decision by the Department commissioner, we review the commissioner's decision, rather than the underlying ALJ's decision, except to the extent that the commissioner adopts the ALJ's findings of fact. *Kirby v. Emp't Sec. Dep't*, 179 Wn. App. 834, 842-43, 320 P.3d 123, *review denied*, 181 Wn.2d 1004 (2014). We consider a commissioner's decision to be prima facie correct, and the party seeking to overturn that decision bears the burden of demonstrating its invalidity. *Id.* at 843. "We defer to factual decisions and view the evidence in the light most favorable to the party who prevailed in the highest forum with fact-finding authority."[3] *Michaelson v. Emp't Sec. Dep't*, 187 Wn. App. 293, 299, 349 P.3d 896 (2015). And we do not substitute our judgment for that of the agency regarding witness credibility or the weight of the evidence. *Smith*, 155 Wn. App. at 35-36.

"We may reverse the commissioner's decision if it is based on an error of law, substantial evidence does not support the decision, or it was arbitrary or capricious." *Kirby*, 179 Wn. App. at

---

[3] Here, the commissioner was the highest forum of fact-finding authority. Because the commissioner ruled in favor of the Department, we view the evidence in the light most favorable to the Department.

843. "We review findings of fact for substantial evidence in light of the whole record." *Id*. at 843. "'Substantial evidence' is evidence that would persuade a fair-minded person of the truth or correctness of the matter." *Smith*, 155 Wn. App. at 32-33. Unchallenged findings of fact are verities on appeal. *Michaelson*, 187 Wn. App. at 299.

"We review questions of law de novo and give substantial weight to the agency's interpretation of the statutes it administers." *Kirby*, 179 Wn. App. at 843. Whether an employee's actions constitute misconduct is generally a mixed question of law and fact. *Michaelson*, 187 Wn. App. at 299. When reviewing such questions, we determine if substantial evidence supports the commissioner's factual findings, and if so, if such facts constitute disqualifying misconduct under the Employment Security Act. *Id*.

### 2. Employment Security Act - Misconduct

Under RCW 50.20.066(1), an individual discharged for misconduct connected to her work is disqualified from receiving unemployment benefits. "Misconduct" includes (1) "[w]illful or wanton disregard of the rights, title, and interests of the employer or a fellow employee," and (2) "[d]eliberate violations or disregard of standards of behavior which the employer has the right to expect of an employee." RCW 50.04.294(1)(a), (b). "Misconduct" also includes "[v]iolation of a company rule if the rule is reasonable and if the claimant knew or should have known of the existence of the rule." RCW 50.04.294(2)(f). But "misconduct" does not include "[i]nadvertence or ordinary negligence in isolated instances" or "[g]ood faith errors in judgment or discretion." RCW 50.04.294(3)(b), (c).

B.    RECORD ON REVIEW

Beach argues that we should consider all transcripts and orders included in the certified appeal board record in determining this case, including all evidence and testimony received by the ALJ at the May 20, 2015 hearing. The Department, on the other hand, argues that we should only consider the October 9, 2015 hearing and the exhibits admitted therein. We agree with the Department.

Judicial review "must be confined to the agency record." RCW 34.05.558. The agency record "shall consist of any agency documents expressing the agency action, other documents identified by the agency as having been considered by it before its action and used as a basis for its action, and any other material described in this chapter as the agency record for the type of agency action at issue, subject to the provisions of this section." RCW 34.05.566(1).

Here, the "agency action" appealed is the commissioner's decision issued on December 4, 2015, affirming the ALJ's order issued after a *de novo* hearing on October 9, 2015. In her October 9, 2015 order, the ALJ expressly listed the persons present at the hearing and the exhibits admitted. Nothing in the ALJ's order indicates that the ALJ considered the evidence presented at the May 20, 2015 hearing in reaching her decision. On appeal of the ALJ's October 9, 2015 order, the commissioner reviewed only the October 9, 2015 proceedings. Therefore, because the only evidence that formed the basis of the commissioner's December 4, 2015 decision was the de novo hearing before the ALJ on October 9, 2015, we confine our review to the testimony and evidence admitted at the October 9, 2015 de novo hearing before the ALJ, the ALJ's October 9, 2015 order, and the commissioner's December 4, 2015 decision.

C.  SUBSTANTIAL EVIDENCE

    1.  Making Unauthorized Charges

Beach argues that substantial evidence does not support the commissioner's findings that she made unauthorized charges on the employer's credit card.  Specifically, Beach contends substantial evidence does not show that the following charges on the Company's credit card were unauthorized: cell phone tracking software; airline tickets to Billings, Montana; additional charges at a conference; and a computer cord.  We disagree.

    a.  Cell phone tracking software

Beach admitted that she purchased cell phone tracking software on the Company's credit card without authorization.  Beach testified that she bought the software as a gift to her fiancé and used the Company's credit card because she wanted it to be a surprise.  While Beach argues that she reimbursed the Company, Beach admitted that she did not ask for permission to charge the purchase on the Company's credit card.  Sander confirmed that Beach used the Company's credit card to purchase the cell phone tracking software.

    b.  Airline tickets to Billings, Montana

The evidence showed that Beach purchased a plane ticket from Las Vegas to Billings, and then to Denver without authorization.  Sander testified that Beach used the Company's credit card to purchase the flight and that Sander was unaware of any legitimate business purpose for this trip.  Beach admitted that she did not have a business reason for the trip to Billings and flew there because she thought she had to be in Billings for a court appearance on February 18.

Beach argues that she and Sander had a verbal agreement for Beach to fly to Billings between business trips if the cost of such flight was cheaper than flying home. There was no evidence that the cost of this trip was cheaper than a flight home. And this trip would not have fallen within the apparent agreement between Beach and Sander because Beach did not fly to Billings to visit her children. Also, the agreement was premised on Beach paying for such trips, and Beach did not pay for this trip. Furthermore, Beach's argument that she had previously travelled to Billings for business in September does not change the fact that this charge was in February and was not for business.[4]

c. Additional conference charges

The evidence showed that Beach purchased a leadership seminar and additional event tickets at a conference on the Company's credit card without authorization. Sander testified that Beach was supposed to attend the conference, but that Beach, without authorization, bought additional event tickets and a leadership seminar on the Company's credit card.

A confirmation e-mail sent to Beach detailing the total cost for the conference shows that the cost of the conference was $985, which included the conference, a ticket to casino night, and a ticket to the closing reception. The e-mail also shows that Beach used the Company's credit card to purchase two additional tickets to casino night, two additional tickets to the closing reception, and a leadership seminar. Beach did not request permission to attend the leadership seminar. And although Beach claims that she only purchased one ticket to casino night for herself on the Company's credit card, Beach already had a ticket to casino night as a part of the cost of the

---

[4] Beach's arguments that six months had passed after she charged a flight to Billings is misleading. Beach attended a conference in Billings in September, but the disputed charge pertains to a flight to Billings in February, one month before her termination.

conference. Also, the confirmation e-mail and Company credit card statement show that Beach purchased more than one ticket for the casino night. Furthermore, although Beach had a ticket to the closing reception as part of the conference fee, she purchased two additional tickets for the closing reception.

Substantial evidence was presented to show that Beach made unauthorized charges on the Company's credit card.[5] Therefore, we hold that the commissioner did not err.

2.      Accounting for Personal Expenses

Beach argues that substantial evidence does not support the commissioner's findings that she did not adequately account for personal expenses. We disagree.

Sander testified that expense reports were due at the end of the month. While Beach submitted expense reports, they were "absolutely a mess," inaccurate, and not kept up to date, which resulted in some lag time for reimbursement. AR at 213. Also, the Company had to go back and speak with Beach because the reimbursement checks that were provided to Beach for her expenses did not match the expense reports that she submitted. The Company sent Beach an e-mail detailing the discrepancies with Beach's expense reports and the reimbursements Beach received from the Company.

---

[5] Beach argues that her purchase of a computer cord was an authorized business-related expense. However, even if this purchase was a business-related expense purchased on her Company credit card, the record shows substantial evidence supports the commissioner's finding that Beach made unauthorized charges on the Company credit card.

Substantial evidence supports the commissioner's finding that Beach did not adequately account for personal expenses. Therefore, we hold that the commissioner did not err.[6]

3. Reason for Discharge

Beach argues that substantial evidence does not support the commissioner's finding that she was terminated for misusing the Company's credit card and incurring unauthorized expenses. We disagree.

First, in its report to the Department, the Company stated that it decided to terminate Beach because she used company funds to purchase tickets to events she did not attend. This included tickets to the leadership seminar and casino night. The Company also detailed other issues that contributed to the ultimate decision to terminate Beach. One of these reasons was personal or unauthorized, unreimbursed charges on the Company's credit card. The Company listed Beach's tracking software purchase as an example of such charges.

Second, Sander testified that Beach was terminated for misusing the Company's credit card and corporate funds. Sander had previously talked to Beach about her spending of company funds on multiple occasions. Beach used the Company's credit card to purchase additional conference event tickets that she did not use and a leadership seminar without authorization. Beach also used the Company's credit card to purchase airline tickets from Las Vegas, Nevada to Billings, Montana and then to Denver, Colorado when there was no business reason for the trip. And Beach used the Company's credit card to purchase an airline ticket to Orlando through Las Vegas to watch a basketball tournament.

---

[6] Beach also argues that she was not adequately reimbursed by the Company. However, that fact is not at issue on this appeal.

Beach argues that the Company included other reasons for termination in its report to the Department, that Sander focused on the wasted tickets during the first administrative hearing, that she purchased the tracking software three months before her termination, and that the Company's credibility is questionable. But the commissioner did not base her decision on the other reasons provided by the Company as reasons for Beach's termination. And, as discussed above, because the commissioner's decision was not based on the first administrative hearing, but on the de novo hearing held on October 9, the first administrative hearing is not part of the agency record on review before this court. Furthermore, we do not substitute our judgment for that of the agency regarding witness credibility or the weight of the evidence. *Smith*, 155 Wn. App. at 35-36.

Substantial evidence supports the commissioner's finding that Beach (1) made unauthorized charges on the employer's credit card, (2) did not adequately account for personal expenses, and (3) was discharged because she misused her employer's credit card and incurred unauthorized expenses. Therefore, we hold that the commissioner did not err.

D. CONCLUSIONS OF LAW

Beach argues that the commissioner misinterpreted and misapplied the law in concluding that she was terminated for misconduct. We disagree.

1. Willful or Wanton Disregard of Employer's Interests

Beach argues that the commissioner erred when she concluded that Beach's actions constituted misconduct under RCW 50.04.294(1)(a). Beach's argument is not persuasive.

Under RCW 50.04.294(1)(a), "misconduct" includes "[w]illful or wanton disregard of the rights, title, and interests of the employer or a fellow employee." An employee acts with willful disregard when she (1) is aware of her employer's interest, (2) knows or should have known that

16

certain conduct jeopardizes that interest, but (3) nonetheless intentionally performs the act, willfully disregarding its probable consequences. *Kirby*, 179 Wn. App. 844.

Beach contends that she did not commit misconduct as defined by RCW 50.04.294(1)(a) because she acted in the best interest of the Company, she went through her expense report with Sander a month before termination, she was not aware that she was violating or disregarding the Company's rights, and the Company did not have any written policies or procedures regarding the use of company funds. However, the commissioner found that

> 4. Expense reimbursement requests are due at the end of each month; employees are advised to file reimbursement requests. The claimant filed reimbursement requests, and the employer issued checks for reimbursement, but then the claimant would update her electronic reimbursement request, causing delay in reimbursement of the additional expenses. As a result, discussions about reconciliation of the reimbursement requests took place between the claimant and the employer, Ms. Sander.
>
> 5. The claimant was issued a credit card by the employer for use for business expenses. The claimant used the business credit card for both business and personal expenses. The claimant reimbursed the employer for some of the personal expenses charged to the employer's credit card, but she did not adequately account for personal expenses, and she did not produce receipts or explain all the expenses charged. The employer required, as a matter of policy, that employees maintain receipts for purchases on the employer's credit card.
>
> 6. The employer had discussions with the claimant about cutting expenses, and also about reconciling the expenses charged. The claimant did not adequately explain the charges made. Although some expenses were explained, and some were reimbursed to the employer both before and after the claimant was discharged, she charged personal expenses on her employer's credit card without obtaining authorization to do so.
>
> 7. Among the unauthorized charges the claimant made on the employer's credit card are airline expenses which were never documented by the claimant or explained. *See* Exhibit 99. The claimant did not obtain authorization to attend a "Courageous Leadership" seminar, and charged the fee for attendance of $205.00 to the employer's account. She purchased extra tickets to events, without authorization, and charged them to the employer's account. She

purchased unauthorized "extras" while traveling and charged the expenses to the employer. *Id.*

8. The employer advised the claimant not to purchase airline "extras" while traveling, unless purchasing the extra amenities as a personal expense. The claimant purchased such amenities using the employer's credit account.[7]

AR at 734.

Thus, Beach was aware of the Company's interest in minimizing expenses and properly accounting for personal expenses. Beach also knew that her continued conduct of charging personal expenses on the Company credit card, not timely reconciling her expenses, and charging "extras" while travelling jeopardized the Company's interest. Beach nonetheless intentionally continued conducting herself in the manner advised against or willfully disregarded the probable consequences of her conduct. The commissioner's findings support the conclusion that Beach's conduct was a willful or wanton disregard of the Company's interest. Therefore, we hold that the commissioner did not err.

2.      Violation of a Reasonable Company Rule

Beach argues that the commissioner erroneously concluded that she violated a reasonable company rule under RCW 50.04.294(2)(f). We disagree.

Under RCW 50.04.294(2)(f), misconduct includes the "[v]iolation of a company rule if the rule is reasonable and if the claimant knew or should have known of the existence of the rule." "A company rule is reasonable if it is related to [the] job duties, is a normal business requirement or practice for [the] occupation or industry, or is required by law or regulation." WAC 192-150-

---

[7] Beach does not challenge findings 4 through 6, and 8. Therefore, they are verities on appeal. *Michaelson*, 187 Wn. App. at 299. And substantial evidence supports the commissioner's finding 7 that Beach made unauthorized charges on the Company's credit card.

210(4). "[T]here is no requirement in the [Employment Security Act] or the Department's regulations that a company rule be written or contained in a handbook for its violation to constitute misconduct." *Daniels v. Emp't Sec. Dep't*, 168 Wn. App. 721, 729, 281 P.3d 310, *review denied*, 175 Wn.2d 1028 (2012); *see* chapter 55.20 RCW.

### a. Violation of a Rule

Here, the commissioner found that for reimbursement, the Company required employees to submit a request for reimbursement and receipts to reconcile the reimbursement requested at the end of each month. The Company also required employees to maintain receipts for purchases on the Company's credit card.

These Company rules on reimbursement and accounting for personal expenses were reasonable as a normal business requirement. The timely submission of a reimbursement report allows a business to properly reimburse employees for expenses that the business should cover. And maintaining receipts allows a business to verify that such expenses were made and constitute legitimate purchases to cover.

The commissioner also found that employees were advised to file reimbursement requests at the end of each month and that Beach filed such requests.[8] The commissioner further found that the Company had discussions with Beach about the reconciliation of her reimbursement requests and expenses charged. Therefore, Beach was aware of the Company's rules.

But Beach violated the Company's rules. The commissioner found that Beach would file reimbursement requests, the Company would issue checks, and then Beach would later amend her

---

[8] Beach does not challenge this finding, and thus, it is a verity on appeal. *Michaelson*, 187 Wn. App. at 299.

requests. Also, Beach failed to adequately account for personal expenses and produce receipts. And Beach did not follow established procedures for reimbursement of expenses and accounting for personal expenses incurred on the Company's credit card.[9] These findings support the conclusion that Beach committed misconduct by violating a reasonable company rule.

           b.      No Clear Policy/Rule

Beach argues that the Company did not have a clear written policy that she could have violated and that this resulted in a good faith error in judgment. While the Company did not have a written policy, the Company did have clear rules regarding the use of the Company's credit card and reimbursement of expenses, Beach was made aware of the Company's rules, and she violated the Company's rules.

First, Beach argues that the Company admitted it did not have written policies or procedures on the use of company funds. However, "there is no requirement in the [Employment Security Act] or the Department's regulations that a company rule [must] be written or contained in a handbook for its violation to constitute misconduct." *Daniels*, 168 Wn. App. at 729. Thus, the Company was not required to have its policies or procedures written down in order for Beach to have violated them.

---

[9] While included in the commissioner's conclusions of law, these conclusions are actually findings of fact and should be treated as such. *See Tapper v. Emp't Sec. Dep't*, 122 Wn.2d 397, 406, 858 P.2d 494 (1993) ("When findings of fact are . . . hidden within conclusions of law, it is within the prerogative of an appellate court to exercise its own authority in determining what facts have actually been found below."). The commissioner's finding that Beach did not follow established reimbursement procedures is supported by Sander's testimony that Beach would go back and update her expense reports after a check was issued, and that she had to speak with Beach because her reports did not match the checks issued. This finding is also supported by the Company's report and e-mail detailing the difficulties reconciling Beach's expense reports. And the commissioner's finding that Beach did not adequately account for personal expenses is supported by substantial evidence as detailed above.

Second, Beach argues she could not have adhered to the rules regarding use of the Company's credit card until October and that she could not submit her expense report because the reporting program did not always work. Beach notes she testified that she believed she was always acting in the best interest of the Company.

However, employees were advised to file reimbursement reports at the end of the month, Sander spoke with Beach about the reconciliation of her reimbursement requests, and the record shows that Beach was the only employee that had any problems. While Beach did not have a corporate credit card until October, she could still have adhered to the Company's rules regarding the timely submission of expense reports and maintenance of receipts. Moreover, even when the reporting program did not work, Beach admitted that she would e-mail her reports.

Third, Beach argues that even if she violated a reasonable company rule, cases have found that violations of company rules may not constitute misconduct, citing *Wilson v. Emp't Sec. Dep't*.[10] In *Wilson*, an employee at a diamond store violated a company rule on logging diamonds and putting diamonds into the safe. 87 Wn. App. at 202. The court found that the employee did not commit misconduct. *Id*. The court noted that an "employee's violation of an employer's rule 'must be intentional, grossly negligent, or continue to take place after notice or warnings'" and that "mere incompetence, inefficiency, erroneous judgment, or ordinary negligence does not constitute misconduct." *Id.* (quoting *Tapper v. Emp't Sec. Dep't*, 122 Wn.2d 397, 406, 409, 858 P.2d 494 (1993)). The court reasoned that there was no evidence showing an intent to cause the employer harm and that the employee's conduct at most "amounted to negligence, incompetence, or an exercise of poor judgment." *Id*.

---

[10] 87 Wn. App. 197, 940 P.2d 269 (1997).

However, *Wilson* interpreted a test for a previous version of the misconduct statute that did not specifically include the violation of a reasonable company rule. The applicable statute in this case was enacted in 2003. The current statute states that "misconduct" does not include "[i]nadvertence or ordinary negligence in isolated instances." RCW 50.04.294(3)(b).

Here, the commissioner found that, despite being talked to about reconciling her expenses, Beach did not adequately account for personal expenses and produce receipts. The commissioner also found that Beach made multiple unauthorized charges on the Company credit card. This shows that Beach's violations were not isolated instances but occurred multiple times. Thus, the commissioner's conclusion that Beach committed misconduct by violating a reasonable company rule is supported by the findings. We hold that the commissioner did not err.

3.     Deliberate Violations or Disregard of Standards

Beach argues that the commissioner erred when he concluded that Beach's actions were misconduct under RCW 50.04.294(1)(b). We disagree.

Under RCW 50.04.294(1)(b), "misconduct" includes "[d]eliberate violations or disregard of standards of behavior which the employer has the right to expect of an employee." "Disregard" is not defined. An undefined term in a statute should be given its "'usual and ordinary meaning.'" *Wash. Trucking Ass'n v. Emp't Sec. Dep't*, 188 Wn.2d 198, 224, 393 P.3d 761 (2017) (quoting *Burton v. Lehman*, 153 Wn.2d 416, 422, 103 P.3d 1230 (2005)), *cert. denied*, No. 17-145, 2017 WL 3324734 (U.S. Oct. 2, 2017). Webster's defines "disregard" as "to treat without fitting respect or attention," "to treat as unworthy of regard or notice," and "intentional slight or neglect." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 655 (2002).

Here, the commissioner found that Beach was issued a corporate credit card for business expenses, but that Beach "used the business credit card for both business and personal expenses." AR at 734 (Finding of Fact (FF) 5). The commissioner then found that the "employer required, as a matter of policy, that employees maintain receipts for purchases on the employer's credit card." AR at 734 (FF 5). And the commissioner found that the "employer had discussions with [Beach] about cutting expenses." AR at 734 (FF 6). In such discussions, it was made clear that extraneous expenses were not necessary nor appropriate. The commissioner also found that Beach charged to her employer a flight to Billings, a leadership seminar, and additional tickets to casino night, which she did not have authorization to do. And Beach only reimbursed some of the personal expenses charged to the Company's credit card. The commissioner further found that Beach "did not follow established procedures in requesting reimbursement of expenses, or in accounting for personal expenses on the employer's account." AR at 736 (CL 9). These findings show that Beach disregarded standards that the Company expected of her relating to the use of the Company's credit card, extraneous spending, reimbursement, and accounting for expenses.

Beach also argues that her deviation from the Company's expectations were good faith errors in judgment and that not every deviation from an employer's expectations constitutes misconduct. Beach cites to *Ciskie v. Emp't Sec. Dep't*, 35 Wn. App. 72, 664 P.2d 1318 (1983), for support.

23

In *Ciskie*, the employee deviated from the proper procedure for work absences because of a family emergency and tried to comply before leaving work. 35 Wn. App. at 73-76. The court concluded that the employee did not commit misconduct because his deviation from the proper procedure was not sufficiently culpable to constitute a willful or wanton disregard of his employer's interests. *Id*. at 77.

In contrast here, Beach did not depart from the Company's standards because of any emergency or pressing circumstance. Beach continually made unauthorized and personal charges on the Company's credit card and did not follow reimbursement or accounting procedures, even after being made aware of the Company's expectations.

The commissioner's findings support the conclusion that Beach committed misconduct by violating or disregarding standards of behavior which the employer has the right to expect of an employee. Therefore, we hold that the commissioner did not err.

## ATTORNEY FEES

Beach requests reasonable attorney fees under RCW 50.32.160. Under RCW 50.32.160, "if the decision of the commissioner shall be reversed or modified, [reasonable attorney] fee[s] and the costs [of appeal] shall be payable out of the unemployment compensation administration fund." However, we affirm the commissioner's decision. Therefore, we deny Beach's request for attorney fees.

No. 49688-7-II

We affirm the commissioner's decision.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Lee, J.

We concur:

_____
Johanson, P.J.

_____
Melnick, J.